UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

LUC R. PIERRE,

Case No. 17-CV-05782 (JGK) (KNF)

Plaintiff

-against-

THE CITY OF NEW YORK, SEUNGHWAN KIM, JAMES COX, KATHERINE REILLY, LAUREN JACOBSON, ADAM KARP and JUDITH BRUSGARD,

Defendants

--------------------------------------------------------------

# MEMORANDUM OF LAW

**LAW OFFICES OF K.C. OKOLI, P.C.**
Attorney at Law
330 Seventh Avenue
15th Floor
New York, N.Y. 10001
(212) 564-8152 (voice)
(212) 268-3443 (fax)

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT .......... 1

STANDARDS GOVERNING SUMMARY JUDGMENT .......... 5

STATEMENT OF RELEVANT FACTS .......... 6

ARGUMENT

POINT I

PLAINTIFF'S TWO FAILURE TO PROMOTE CLAIMS HAVE GREAT MERIT .......... 6

A. The January 2016 Property Damage Division Chief Position .......... 7

B. The July 2016 School Claims Division Chief Position .......... 10

POINT II

PLAINTIFF'S RETALIATION CLAIMS ARE VIABLE BOTH UNDER FEDERAL AND NYCHRL .......... 11

POINT III

PLAINTIFF MADE OUT A VIABLE HWE CLAIM .......... 14

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Page(s)**

*Amnesty Am. v. Town of W. Hartford*,
361 F.3d113, 122 (2d Cir.2004) ........................................................... 5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.6 Ed. 2d 202 (1986) ...................... 5

*Globecon Group, LLC v. Hartford Fire Ins. Co.*,
434 F.3d 165, 170 (2d Cir. 2006)............................................................ 5

*Huminski v. Corsones*,
396 F.3d 53. 69 (2d Cir. 2005)................................................................ 5

*Margherita v. FedEx Exp.*,No. 07 CV 4826 (NG)(RER),
2011 WL 5024577, at *8 (E.D.N.Y. Oct. 20, 2011)....................................... 12

*Marvel Characters, Inc. v. Simon*,
310 F.3d 280, 282 (2d Cir. 2002)............................................................. 5

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102, 109 (2d Cir. 2013)...............................................................11

Moccio v. Cornell Univ.,
889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012) ................................................ 13

*Pilgrim v. McGraw-Hill Cos.*,
599 F.Supp.2d 462, 469 (S.D.N.Y. 2009)..................................................... 13

*Stern v. Trustees of Columbia Univ.*,
131 F.3d 305,311-312 92d Cir. 1997)........................................................... 8

*Williams v. N.Y.C. Hous. Auth.*,
872 N.Y.S.2d 27, 41 & n.30............................................................................ 12

*Zakrzewska v. New Sch.*,
14 N.Y.3d 469, 479 (N.Y. 2010) ........................................................... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LUC R. PIERRE,

Plaintiff

-against-

THE CITY OF NEW YORK, SEUNGHWAN KIM, JAMES COX, KATHERINE REILLY, LAUREN JACOBSON, ADAM KARP and JUDITH BRUSGARD,

Defendants
------------------------------------------------------------------X

Case No. 17-CV-05782 (JGK) (KNF)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff submits this Memorandum of Law, the Declaration of Luc R. Pierre, plaintiff herein, Plaintiff's Rule 56.1 Counterstatement and the Declaration of Kenechukwu Okoli, all in opposition to the Defendants' motion for summary judgment herein.

**PRELIMINARY STATEMENT**

Luc R. Pierre ("Plaintiff" or "Pierre") is a Black male and was, at all times relevant to this litigation, an employee of the City of New York assigned to the Office of the Comptroller of the City of New York ("Comptroller's Office"). Pierre is an attorney licensed to practice law in the State of New York. He was Assistant District Attorney in Kings County for over 12 years. Before that he had worked in the retail banking business for many years as an Assistant Treasurer and Customer Service Manager. In both positions, he supervised a staff of

professionals. This was all before Pierre joined the Bureau of Law and Adjustment ("BLA") of the Comptroller's Office in 2013 as an Administrative Claim Examiner – a managerial position.

Pierre was initially hired as a provisional employee, but he has since attained permanent civil service status as an Administrative Claim Examiner. From the time of his hire, Pierre worked well with both his supervisors and his co-workers without any complaints. After the administration of the Comptroller's Office changed from Joh Liu to Scott Stringer, the new administrative staff who came with the new administration began to look for ways, it appeared, to get rid of those they did not like. It is understandable that the new administration may want to bring in its own people, but the problem with the way they did it is that it appeared to be racially motivated and directed towards older employees.

Pierre is a dark-skinned Black man who was born in Haiti in 1949. Thus, Pierre appears to fit the profile of someone who comes within the crosshairs of the new administration. Seunghwan Kim, the Assistant Comptroller in charge of BLA where Pierre works, immediately charged one Emilio Gonzalez, upon the latter's promotion to Chief, Property Damage, to get rid of the "Black man" in Mr. Gonzalez' unit who was making more money than all his colleagues in Property Damage. That Black man was Luc R. Pierre. In fact, partly because Mr. Gonzalez defied Mr. Kim's order to get rid of Pierre, Gonzalez himself was demoted less than one year after Gonzalez's promotion to the Chief position with fanfare.

Defendants James Cox, Katherine Reilly, Lauren Jacobson, Adam Karp and Judith Brusgard who were all under Mr. Kim, became willing tools in his hands to actualize his racist machinations. In their own different ways, these defendants took actions which were

discriminatory, either individually or collectively, to harm Pierre. Pierre complained about the discriminatory conduct of one or more of the defendants towards him. They wasted no time to unleash on him their retaliatory attacks. These retaliatory acts were both in things large and small. From failure to promote to denial of the same amenities which other managerial and supervisory employees enjoyed in the Comptroller's Office, including assignment to the smallest and most undesirable office space in BLA. Even newly hired employees were who were less than 30 years of age, were assigned better and larger office spaces that Pierre.

The clear aim was to annoy and humiliate Pierre. Without Pierre's knowledge, his superiors who thought that he was paid way too much never addressed this fact with him. Instead, they held meetings at which they decided that Pierre should be terminated because he was a "political" appointee who was paid much more than he deserved! But for Pierre's attainment of permanent civil service status, it is most likely that his superiors would have succeeded in terminating him. Of course, his official termination letter would have stated that he was being terminated because he was a political appointee; it probably would have shown that he was "incompetent" since they were already building such a case against him.

Two of the promotions which were denied to Pierre went to two Whites who were much younger than Pierre, namely: Judith Brusgard and Ross Goldband. Instructively, both Ms. Brusgard and Mr. Goldband did not have the minimum qualifications advertised for the positions into which they were promoted at the time of their job interviews and promotions. Regardless of how well Ms. Brusgard and Mr. Goldband may subsequently have performed in their new positions, by interviewing and selecting them when they did not have the advertised minimum qualification, defendants rigged the process in their favour. Put

differently, defendants discriminated against all those who had the same qualifications as Ms. Brusgard and Mr. Goldband but did not apply because they knew they did not have the minimum qualification for the job. Defendants also cheated other applicants, including Pierre, by allowing Ms. Brusgard and Mr. Goldband to interview for the respective positions they were promoted to when they should not have been interviewed because of lack of the advertised minimum qualifications.

There is something else which Defendants have done in connection with their motion for summary judgment. They have created or made up civil service titles which do not exist to fit into their narrative. For example, they have referred to Judith Brusgard as "Supervising Claims Specialist, Level 3" See Memo of Law, at p3. They have also referred to Melvin Ford and Vanessa Tirado as "Unit Supervisor, Claim Specialist Level 3." See the Declaration of Brittania Stewart, at p.2. These positions are unknown to New York City civil service and do not exist. It is clear that the reason Defendants have used these non-existent titles is to bolster their defences against Pierre's claims in this litigation.

It should be noted also that defendants quibble over picayune matters. For example, they make heavy weather of the fact that Plaintiff filled out a form which correctly listed his residential address in Valley Stream, but a pre-printed part of the form which Pierre endorsed stated that Valley Stream was in the "City of New York." It is unlikely that any resident of the City of New York will be misled into thinking that Valley Stream in Nassau County is located in the City of New York. If Plaintiff wanted to mislead on this form, he could have given his previous address in Brooklyn or Queens instead of his correct address which is obviously not located in any of the five boroughs which constitute the City of New York.

Despite the fact that plaintiff explained that it was an oversight that he did not catch the error, Defendants still bring this up.

It should be emphasized that two of the three promotions which Pierre complains about went to individuals who did not meet the published minimum requirements for the positions. These are the Chief, Property Damage which went to Judith Brusgard and the Chief, School Claims which went to Ross Goldband. Both individuals did not qualify to be interviewed for their respective positions let alone hired. Defendants' motion must be denied with regard to those two positions.

**STANDARDS GOVERNING SUMMARY JUDGMENT**

The summary judgment standard is well-settled in the Second Circuit. *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 282 (2d Cir. 2002). Pursuant to Federal Rules of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitle to judgment as a matter of law." FED. R. CIV. P 56(c): *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53. 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences favorable to that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the non-moving party").

## STATEMENT OF RELEVANT FACTS

For a statement of the relevant facts necessary for a proper determination of the Defendants' motion for summary judgment herein, the Court is respectfully referred to the Plaintiff's Rule 56.1 Objections and Counter-Statement of Undisputed Material Facts in response to Defendants' Rule 56.1 Statement dated May 19, 2019, the Declaration of Luc R. Pierre dated May 19, 2019, the Declaration of Emilio Gonzalez dated May 19, 2019, and the Declaration of Kenechukwu Okoli dated May 19, 2019, all submitted herewith in Opposition to Summary Judgment. Some of these relevant facts have been summarized above, and some will be cited in appropriate sections of this Memorandum of Law for ease of presentation.

## ARGUMENT

### POINT I

### PLAINTIFF'S *TWO* FAILURE TO PROMOTE CLAIMS HAVE GREAT MERIT

It should be stated at the outset that the two failure to promote claims which Plaintiff complains about cannot be justified by the Defendants. At the time that Judith Brusgard was promoted to the PD Chief she did not possess the advertised minimum qualification for the position. Equally true is the fact that at the time that Ross Goldband was interviewed and promoted for the Division Chief of the School Claims Division, he did not possess the minimum qualification advertised for the position. Because they did not possess the minimum qualifications for the interview, it does not matter, nor should it, that they turned out to be good workers. So, all of the Defendants argument addressed to how these

individuals performed at the job interview are really of no moment. Had they followed the rules set by them in the Job Vacancy Notice, both individuals would not have been interviewed and, therefore, would not have been promoted. There performance at the interviews should therefore count for nothing and must be disregarded in considering this matter.

**A. The January 2016 Property Damage Division Chief Position**

On the evidence developed in this litigation, it cannot possibly be disputed that Pierre is a dark-skinned Black man who was born in Haiti. Nor can it be disputed that he was born in 1949. Thus, he belongs to two distinct protected classes based on his race and age.

It can also be confidently contended that no fair-minded person will dispute the fact that as of January 2016, Pierre was very well qualified for the Division Chief position in Property Damage. The facts are as follows. For almost three years, Pierre had been an Administrative Claim Examiner, a managerial position within NYC civil service. In that position, he was afforded the opportunity and did supervise staff, write Requests for Authorizations which were traditionally handled by the Division Chief, and provided legal counselling and advice when needed. He had also negotiated and adjusted various kinds of property damage claims which were referred to him in the Property Damage division.

Before taking up his appointment with the Comptroller's Office in 2013, Pierre had been a line Assistant District Attorney in Kings County for about 12 years. In that position, he trained and supervised new attorneys. He also supervised other professional staff. Even before his work as Assistant District Attorney, Pierre had been a managerial employee in retail banking in which position he also managed and supervised staff for over ten years. It goes without saying that the position was denied to Pierre.

Therefore, the only question that arises with regard to that position is whether the denial occurred in circumstances giving rise to the inference of discrimination on the basis of membership of that protected class. *See Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 311-312 92d Cir. 1997).

The job requires a BA/BS degree with four or more years of experience investigating, adjusting, settling and making disposition determinations on a variety of tort claims. Eighteen months of this experience "must have been in a supervisory, managerial, **or** executive capacity." Supervision must have included supervising staff performing professional work in investigating and adjusting claims, **or** education and/or experience equivalent to the above. However, **all** candidates must have the 18 months of experience in an administrative, managerial **or** supervisory capacity as described above.

Judith Brusgard had never worked in any executive or managerial capacity at the time that she applied for the Division Chief position. *See* Okoli Decl., ¶12, Exhibit N. So, she could only have qualified if she had the requisite supervisory experience, including the supervision of staff. Her application and and resume show that she did not possesses the requisite 18 months supervisory experience. All the arguments of the Defendants directed at the performance of Ms. Brusgard *after her* promotion are of no relevance to the Plaintiff's claim in this action. If Ms. Brusgard did not meet the minimum requirements of the JVN and, therefore, did not qualify for interview, of what relevance is her good performance after the improper interview and promotion? Put differently, if someone has been discriminated against, is it an answer to that person's lawsuit that the beneficiary of the discriminatory conduct turned out to be the best worker ever?

The upshot is that Ms. Brusgard did not possess the minimum qualification to apply for the position at the time of her application. Therefore, it does not matter that, after the fact, she turned out to be a good worker. Indeed, the fact of her being selected and interviewed despite falling short of the supervisory requirement for the job is indicative of pretext for discrimination against the other applicants. In fact, she was preselected even before the job announcement was made. It will be recalled that James Cox asked her to "keep an eye" on the Division after the demotion of Emilio Gonzalez but before her substantive promotion to the position.

Mr. Cox did this despite the fact that there were two other workers in the Division who had a superior position to Ms. Brusgard. Ms Suzy Thomas, an Asian woman, who had seniority over Ms. Brusgard in their title of Claim Specialist Level 3, and Plaintiff who was Administrative Claims Examiner, a position to which a Claim Specialist Level 3 would normally be promoted to. *See* Pierre Decl., Exhibit B, page 5. Is it a coincidence that the two persons who were Ms. Brusgard's superiors at the time were not asked to supervise the Division in the interim pending the appointment of a substantive Division Chief? Is it a coincidence that the beneficiary of this promotion was described in glowing terms by the interview panel in comparison with the others?

Defendants cannot show that their interview and selection of Ms. Brusgard were not discriminatory; that they in fact gave everyone a fair chance. It should not be forgotten that Both Mr. Kim and Mr. Cox had expressed their desire to terminate Plaintiff well before the interviews for the job. Why would they give a good interview to someone whom they desperately wanted to terminate? The interview was only a pretext for continuing their

discriminatory/retaliatory conduct toward the Plaintiff that they did not like for being "Black guy" who was making too much money.

**B. The July 2016 School Claims Division Chief Position**

What happened with this position is even worse than that of Ms. Brusgard in terms of the lack of qualification of Ross Goldband who got the promotion. According to Adam Karp, it was he who wrote the Job Vacancy Notice for this position. *See* Okoli Decl, ¶6, Exhibit H, Karp Dep., 26:24-27:2.. Mr. Karp is a licensed attorney who has a J.D. and M.B.A. degrees. *See* Karp. Dep. 13:17-20. Therefore, one must assume that he fully understood the import of including minimum qualifications for the position. He was also a member of the interviewing panel for the position. Okoli, Exhibit K, Karp. Dep., 21-22.

He was presented with the cover letter and resume of Mr. Goldband at his deposition and was asked to show where Mr. Goldband indicated that he met the minimum qualification for the Division Chief, School Claims and admitted honestly that it was not on application package which Mr. Goldband submitted for the job. Okoli Decl., Exhibit H, Karp Dep., 28-29. Despite this colossal lack of the requisite qualification, they selected Mr. Goldband for the position. Not only is Mr. Younger young enough to be Plaintiff's son, he is the youngest person interviewed for the position.

Again, because Mr. Goldband did not meet the minimum requirements, no amount of explanation is going to explain away that serious defect in the process. Defendants failed to follow their own rules of engagement.

**POINT II**

**PLAINTIFF'S RETALIATION CLAIMS ARE VIABLE BOTH UNDER FEDERAL AND NYCHRL**

Plaintiff complained to Deputy Comptroller, Camille Joseph, about discrimination in the Comptroller's Office against his person. The actions of the Defendants towards Plaintiff subsequent to August 2016 meet the indicia of retaliatory actions. The complaint to Deputy Comptroller – a position higher than those of each and every one of the Defendants named in this action – is engaging in protected activity. Such complaint had to be known to the Defendants herein or, must be attributed to them giving the high position of the person complained to. Therefore, the suggestion that such a complaint was unknown to the Defendants or could not be attributed to the City is risible. Who else other than the Comptroller himself was high enough for Plaintiff to complain to?

If Defendants insist that they were unaware of the complaint to Ms. Joseph, they could easily have obtained a sworn statement from Ms. Joseph stating that Plaintiff never complained to her, or that she never shared the Plaintiff's complaint with anyone in the Comptroller's Office. But the did not because they were fully aware of the complaint.

Both under federal law and the NYCHRL, Plaintiff's retaliation case is made out to defeat the Defendants' motion for summary judgment. Because the NYCHRL's provisions are to be construed broadly in favor of discrimination plaintiffs, courts "must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York

City standards." *Id.* "[S]ummary judgment is still appropriate in NYCHRL cases, but only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." *Id.* at 113.

Unlike under state and federal law, under NYCHRL a plaintiff need not demonstrate material adversity to support a claim for discrimination. *See Margherita v. FedEx Exp.,*No. 07 CV 4826 (NG)(RER), 2011 WL 5024577, at *8 (E.D.N.Y. Oct. 20, 2011). "In order to make out the [adverse action] prong of a prima facie case of discrimination under the NYCHRL, a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty." *Williams v. Regus Mgmt. Group,*LLC, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011). In the hostile work environment context, there is no "severe or pervasive" requirement under the NYCHRL. *Varughese v. Mount Sinai Med. Ctr.,* No. 12 Civ. 8812 (CM) (JCF), 2015 U.S. Dist. LEXIS 43758, at *169 (S.D.N.Y. Mar. 27, 2015). "While courts may still dismiss `truly insubstantial cases,' even a single comment may be actionable in the proper context." *Mihalik,* 715 F.3d at 113(citing *Williams v. N.Y.C. Hous. Auth.,* 872 N.Y.S.2d 27, 41 & n.30). Because the Court concluded that there is sufficient evidence to allow a reasonable juror to conclude that Plaintiff experienced a hostile work environment under Title VII and NYSHRL, the Court finds that he has also met the lesser burden under the NYCHRL.

The NYCHRL imposes liability on the employer[3] for discriminatory acts of an employee three circumstances:

(1) where the offending employee "exercised managerial or supervisory responsibility" ...; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and

acquiesced in it or failed to take "immediate and appropriate corrective action"; and (3) where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent [it]." *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (N.Y. 2010) (citing N.Y.C Admin. Code § 8-107). As discussed above, Defendant Aristy was not Plaintiff's manager or supervisor. Nor has Plaintiff pointed to sufficient evidence in the record to raise a material issue of fact as to whether the City either failed to address the gym incident once Plaintiff filed his EEO complaints or was negligent in failing to prevent the incident in the first place. For these reasons, the City Defendants are entitled to summary judgment on Plaintiff's NYCHRL hostile work environment claim.

**NYCHRL**

"[L]iability for retaliation under the NYCHRL is broader than under the companion federal and state statutes, `in that there is no requirement that the employee suffer a materially adverse action.'" *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012),aff'd, 526 F. App'x 124 (2d Cir. 2013) (quoting *Pilgrim v. McGraw-Hill Cos.*, 599 F.Supp.2d 462, 469 (S.D.N.Y. 2009)). Given that Plaintiff has raised material issue of facts as to employer retaliation under federal and state law, he has also met the broader NYCHRL retaliation standard. City Defendants' request for summary judgment on Plaintiff's NYCHRL retaliation claim is therefore denied. However, the same analysis applies to Plaintiff's retaliation claims against Individual Defendants under NYCHRL as under § 1983 and NYSHRL. Because Plaintiff has not alleged that Individual Defendants were personally

involved in the post-complaint retaliatory acts, they are entitled to summary judgment on the NYCHRL retaliation claim, too.

## POINT III

## PLAINTIFF MADE OUT A VIABLE HWE CLAIM

The facts outlined in the accompanying affidavits and the deposition transcript of the Plaintiff sufficiently make out a claim for hostile work environment against the Defendants who acted together to create a living hell for Plaintiff in the Comptroller's Office. They made Plaintiff's job unnecessarily difficult and set him up to fail. Even in the littlest of things – providing with the proper tools to do his job, a telephone, they refused while every other managerial or supervisory employee had the proper phone. To humiliate Plaintiff, Ms. Brusgard and Ms./ Reilly assigned Plaintiff to a filthy place that no one was using as an office space at the time. Moreover, they assigned him the smallest office space in the entire Property Damage Division for no articulable reason, and refused to relocate him despite the available of other office space. Newly hired employees even had bigger office spaces than Plaintiff.

## CONCLUSION

For all of the foregoing reasons, the motion should be denied with motion costs.

Dated: New York, New York
May 20, 2019

**LAW OFFICES OF K.C. OKOLI, P.C.**
*Attorneys for Plaintiff*
LUC R. PIERRE
330 Seventh Avenue

15th Floor
New York, New York 10001
(212) 564-8152

By: ____________________
K.C. OKOLI, ESQ.

**FOR SERVICE ON:**

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
*Attorney for the Defendants*
NYC Law Department
100 Church Street
New York, New York 10007
BY: IVAN A. MENDEZ, JR.
Assistant Corporation Counsel

**CERTIFICATE OF COMPLIANCE**

I, Kenechukwu Okoli, hereby certify that the foregoing Plaintiff's Memorandum of Law in Opposition to Summary Judgment has 3,955 words, including footnotes. I further certify that the above-referenced Memorandum of Law complies with the Individual Rules and Practice of this Court.

Kenechukwu Okoli, Esq.