**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**LUC R. PIERRE,**

                    **Plaintiff,**         **17-cv-5782 (JGK)**

       **- against -**           **MEMORANDUM OPINION AND**
                                        **ORDER**

**THE CITY OF NEW YORK, et al.,**

                 **Defendants.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiff, Luc R. Pierre, brings this action pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 et seq., against the City of New York ("the City"), and individual defendants, Seunghwan Kim, James Cox, Katherine Reilly, Lauren Jacobson, Adam Karp, and Judith Brusgard. The plaintiff alleges that the defendants denied him promotions because of his age, race, and national origin, that the defendants subjected him to a hostile work environment, and that the plaintiff faced retaliation because he complained about this discrimination. The defendants now move for summary judgment dismissing all claims against them. For the reasons stated below, the defendants' motion is **granted**.

## I.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs.,
Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial
court's task at the summary judgment motion stage of the
litigation is carefully limited to discerning whether there are
any genuine issues of material fact to be tried, not to deciding
them. Its duty, in short, is confined at this point to issue-
finding; it does not extend to issue-resolution." Gallo, 22 F.3d
at 1224. The moving party bears the initial burden of "informing
the district court of the basis for its motion" and identifying
the matter that "it believes demonstrate[s] the absence of a
genuine issue of material fact." Celotex, 477 U.S. at 323. The
substantive law governing the case will identify those facts
that are material and "[o]nly disputes over facts that might
affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing
United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see
also Gallo, 22 F.3d at 1223. Summary judgment is improper if any

evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible. . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The following facts are undisputed except where noted.

### A.

The plaintiff is an African-American man who was born in Haiti in 1949. Defs.' 56.1 Stmt. ¶¶ 2, 33. In April, 2013, the plaintiff began working as an Administrative Claims Examiner in the New York City Office of the Comptroller ("OOC"). Id. at ¶ 5. As of April, 2019, the plaintiff continued to be employed in that position. Id. at ¶ 1. Prior to working in the OOC, the plaintiff worked in the retail banking industry for fifteen years and as an Assistant District Attorney in the Kings County District Attorney's office for twelve years. Id. at ¶ 14; Méndez Decl. Ex. F.

### B.

On December 16, 2014, the OOC posted the position of Division Chief, Property Damage Division. Defs.' 56.1 Stmt.

¶ 30. The next day, the plaintiff applied for the position. Id. at ¶ 31. The plaintiff, as well as nine other individuals, were interviewed as part of the selection process for the position. Id. at ¶ 32. The plaintiff was interviewed by James Cox, John Graham, and Vincent Rivera. Id. at ¶ 33. The plaintiff's interviewers determined that he was not well prepared for the interview, was not motivated, and lacked the applicable supervisory experience. Id. at ¶ 34. Emilio Gonzalez, a white Hispanic male born in 1966, was selected for the position. Id. at ¶ 35.

Following Gonzalez's selection in February, 2015, Gonzalez changed the plaintiff's assignments and removed some of the plaintiff's supervisory responsibilities. Pl. Dep. at 112; Gonzalez Decl. ¶ 1. The plaintiff alleges that when he inquired as to the reason for the removal of his supervisory responsibilities, Gonzalez responded that his bosses actually wanted to get rid of the plaintiff. Id. Gonzalez explained that Kim told him to get rid of "the Black guy," which the plaintiff deduced was a reference to him, because he was making too much money. Pl. Dep. at 112; Gonzalez Decl. ¶ 10. Kim denies ever referring to the plaintiff in this way. Kim Dep. at 24.

On January 20, 2016, the OOC once again posted the position of Division Chief, Property Damage Division. Defs.' 56.1 Stmt. ¶ 39. The position required candidates to possess four or more

years of experience in investigating and adjusting tort claims and to have had eighteen months of such experience in a supervisory, managerial, or executive capacity. Méndez Decl. Ex. R. Six days later, the plaintiff applied for the position again. Defs.' 56.1 Stmt. ¶ 40. The plaintiff, as well as four other individuals, were interviewed as part of the selection process for the position. Id. at ¶ 41. The plaintiff was interviewed by James Cox, Seunghwan Kim, and Katherine Reilly. Id. at ¶ 42. At the time, Katherine Reilly reported to James Cox, and James Cox reported to Seunghwan Kim. Kim Dep. at 31-32.

During the plaintiff's interview, the plaintiff stated that being a Division Chief would "not be my passion of life," that he had been assigned to the Property Damage Division when he first applied, and didn't know many people that would willingly choose that division. Pl. Dep. at 133-37. He also stated that he wanted to become Division Chief because it was a "higher position" from which he might be able to "qualify for something else." Id. at 133-34. Kim then asked him, "[a]fter the Division Chief position, then what? And then what?" The plaintiff felt Kim asked this line of questions because Kim felt that the plaintiff would not be at the office for much longer because of the plaintiff's age. Id. at 137-38.

The plaintiff's interviewers noted that he did not interview well, lacked the supervisory experience for the

position, lacked experience for handling property damage claims, and lacked enthusiasm for the Property Damage Division; the interviewers were left with the impression that he was applying for the promotion purely for promotion's sake. Defs.' 56.1 Stmt. ¶¶ 43-45, 48. The plaintiff does not dispute that these comments were what the interviewers noted, but disagrees with the interviewers' findings. Pl.'s 56.1 Stmt. ¶¶ 43-45, 48. Regarding Pierre's interview, Reilly believed that "[i]t was probably one of the worse [sic] interviews that anyone applying for the position had." Reilly Dep. at 38. Judith Brusgrad, a white woman, was selected for the position. Defs.' 56.1 Stmt. ¶ 46. Brusgard, who was approximately 50 years old at the time of her selection, had been employed by the OOC in several capacities, including as a manager, and had worked in the Property Damage Division from 1988 to 1995 and from 2007 to the time of her selection. Id. at ¶ 51. Brusgard's interviewers determined that she interviewed well, had extensive experience in handling property damage claims, and had good ideas on how to improve the Property Division's workflow and the handling of claims. Id. at ¶¶ 52-55. After the interview, Reilly highly recommended Brusgard and thought she was the "Number 1" candidate. Reilly Dep. at 42-43.

The plaintiff alleges that in early 2016, when he believed he was acting as a supervisor, he referred a case to a coworker,

but was later told by that coworker to retrieve the report from Brusgard. Pl. Dep. at 193-94. The plaintiff had thought Brusgard was a clerical person. Id. at 194. The plaintiff felt humiliated because his coworker told him, in front of his colleagues, that Brusgard was the new person in charge of the Property Damage Division. Id.

On June 24, 2016, the OOC posted the position of Division Chief, School Claims Division. Defs.' 56.1 Stmt. ¶ 57. The position required candidates to possess four or more years of experience in investigating and adjusting tort claims and to have had eighteen months of such experience in a supervisory, managerial or executive capacity. Méndez Decl. Ex. Y. Three days later, the plaintiff applied for the position. Defs.' 56.1 Stmt. ¶ 58. The plaintiff, as well as four other individuals, were interviewed as part of the selection process for the position. Id. at ¶ 59. The plaintiff was interviewed by Lauren Jacobson and Adam Karp, who determined that although the plaintiff had prior legal experience before coming to the OOC, he lacked the knowledge of personal injury claims and management experience required for the position. Id. at ¶¶ 60-62. Karp and Jacobson interviewed five candidates and concluded that Ross Goldband was the best candidate for the position, given his prior supervisory experience in private practice and his work at the OOC. Jacobson Dep. at 34, 37-38; Defs.' 56.1 Stmt. ¶¶ 64-65. Goldband also

impressed his interviewers with how prepared he was for the
interview by reviewing school claims and providing suggestions
to improve the School Claims Division. Defs.' 56.1 Stmt. ¶ 64.
Jacobson and Karp recommended Goldband to the assistant
comptroller, Seunghwan Kim. Jacobson Dep. at 35.

As assistant comptroller, Kim reviewed the recommendation
and sent it to the general counsel and human resources for
approval. Kim Dep. at 34. Karp testified that Kim had not
expressed any opinion concerning the plaintiff's candidacy for
the position to him. Karp Dep. at 36-37. Jacobson could not
recall if Kim had expressed any opinion to her about the
plaintiff prior to his interview. Jacobson Dep. at 31. Goldband
is a white man. Pl. Dep. at 198. At some point, Karp went to the
plaintiff's work station and told him that he had a lot to offer
but that they were "going in another direction"; the plaintiff
took this to mean that Karp and his supervisors were looking for
younger, white candidates to fill the position. Id.

On or around August, 2016, the plaintiff spoke to the
Deputy Comptroller for Public Affairs and told her that he was
being discriminated against based on age, race, and national
origin. Defs.' 56.1 Stmt. ¶ 118. The plaintiff did not file a
complaint with the Equal Employment Opportunity Commission and
did not complain to anyone at the OOC about the alleged
discrimination. Id. at ¶¶ 119-21. In March, 2017, the plaintiff

8

filed a Notice of Claim against the City for "unlawful
employment discrimination/retaliation and violation of civil and
constitutional rights." Id. at ¶ 122; Méndez Decl. Ex. FF.

**C.**

The plaintiff alleges that since his report to the Deputy
Comptroller in August, 2016, his supervisors have retaliated by
constantly subjecting him to humiliation and insults and have
made his work environment hostile. Am. Compl. ¶ 55. The
plaintiff cites instances of retaliatory behavior, including
that the plaintiff requested a better phone set and a different
work station, and both requests were denied. Pl. Dep. at 164-65.
The defendants contend that the phone sets used by all claims
examiners were the same and that the request to move work
stations was denied because it was not operationally necessary.
Reilly Dep. at 64-65.

The plaintiff also states that other employees had work
stations and were given 6' x 8' cubicles, but that he was given
a dirty cubicle that was in a small corner, and that at one
point, he had plywood for a desk. Pl. Dep. at 166-67. The
defendants contend that the plaintiff's workspace was outfitted
with appropriate desk cabinets and no raw materials were used.
Reilly Dep. at 70-71.

The plaintiff states that he was humiliated when Reilly
came to the plaintiff and told him in a loud voice in the

presence of his coworkers that "the guys are coming tonight to work, when they come, don't bother them." Pl. Dep. at 169. Reilly denies that this conversation was directed at the plaintiff, and states that she had a conversation with all members of the Property Damage Division to not reach out directly to facilities staff to request any changes to their workstations. Reilly Dep. at 72.

The plaintiff also states that over 800 Sanitations Claims cases were transferred to him in January, 2017. Pl. Dep. at 170-71. The plaintiff alleges that about 100 reports, which were necessary to process the claims and were sent to the Division from the Sanitation Department, had disappeared. Am. Compl. ¶¶ 79-81. The plaintiff alleges that the Sanitation Department refused to provide duplicate copies, and as a result, the plaintiff was unable to process the claims in a timely manner. Id. at ¶ 82. Brusgard, however, stated that all reports were eventually made available, either from the Sanitation department or through a different database. Brusgard Dep. at 110-12. Brusgard informed the plaintiff that the plaintiff's next performance evaluation would not be positive if the claims were not completed on time. Pl. Dep. at 171-72.

In May, 2017, the plaintiff received a performance evaluation covering the period of January 1, 2016 to December 31, 2016 and was rated overall "Needs Improvement." Defs.' 56.1

Stmt. ¶ 104. After the evaluation, the plaintiff entered into a Performance Improvement Plan from June 2, 2017 to December 1, 2017. Id. at ¶ 107.

Between December, 2017 and January, 2018, the plaintiff and Brusgrad exchanged several emails regarding a verbal warning given to the plaintiff concerning the appropriate times for lunch hour and his arrival at work. Defs.' 56.1 Stmt. ¶ 116. The plaintiff said that he had not received an oral warning about his attendance prior to the emails, and cited this as an example of the humiliation and retaliation he allegedly suffered. Pl. Dep. at 189.

In June, 2018, the plaintiff received a performance evaluation covering the period of January 1, 2017 to December 31, 2017 and was again rated overall "Needs Improvement." Defs.' 56.1 Stmt. ¶ 112.

## III.

### A.

The plaintiff's discrimination, hostile work environment, and retaliation claims under Section 1981 against the City fail because his claims are properly brought under Section 1983 and "§ 1981 does not provide a separate private right of action against state actors." Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018) (emphasis added) (dismissing Section 1981 claims against the City of New York). Municipal employees sued

in their official capacity, such as the individual defendants in
this case, are representatives of the state and may not be sued
under Section 1981.

To the extent that the plaintiff is suing the individual
defendants in their individual capacities under Section 1981,
the plaintiff's claims also fail. In Jett v. Dallas Independent
School District, the Supreme Court held that "the express
'action at law' provided by § 1983 for the 'deprivation of any
rights, privileges, or immunities secured by the Constitution
and laws,' provides the exclusive federal damages remedy for the
violation of the rights guaranteed by § 1981 when the claim is
pressed against a state actor." 491 U.S. 701, 735 (1989). The
holding in Jett applies not only to governmental entities, but
also to individuals sued in their individual capacities who are
state actors. See Roddini v. City Univ. of New York, No.
02CV4640, 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003); accord
Gonzalez v. City of New York, 377 F. Supp. 3d 273, 285 (S.D.N.Y.
2019). Therefore, the plaintiff is barred from asserting claims
under Section 1981 against the City and the individual
defendants.[1] The defendants' motion for summary judgment
dismissing the plaintiff's claims under Section 1981 is **granted.**

---

[1] Additionally, the plaintiff abandoned his Section 1981 claims. In his
Opposition, the plaintiff fails to respond to the defendants' argument that
the plaintiff cannot maintain a Section 1981 claim against the City and the
individual defendants. As a result, the plaintiff has abandoned these claims.
See, e.g., Duarte v. St. Barnabas Hosp., 265 F. Supp. 3d 325, 352-53

**B.**

The plaintiff asserts claims against the City, the
individual defendants in their official capacity, and the
individual defendants in their individual capacity under Section
1983 for discrimination, hostile work environment, and
retaliation.

**i.**

Section 1983 provides a cause of action for any person who
has been deprived of a right secured by the Constitution or
federal law under color of state law. 42 U.S.C. § 1983. To
impose Section 1983 liability upon a municipality, a plaintiff
must identify a municipal "policy" or "custom" that caused the
plaintiff's injuries. See Monell v. Dep't of Social Servs., 436
U.S. 658, 694 (1978); see also Bd. of Cnty. Comm'rs v. Brown,
520 U.S. 397, 403; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d
864, 870 (2d Cir. 1992); Bullard v. City of New York, 240 F.
Supp. 2d 292, 299–300 (S.D.N.Y. 2003). The plaintiff must
demonstrate that the municipality was the "moving force" behind
the injuries alleged. Brown, 520 U.S. at 404; Monell, 436 U.S.
at 692. The alleged policy does not need to be contained in an
explicitly adopted rule so long as the unlawful practices of

---

(S.D.N.Y. 2017) (citation omitted) ("Federal courts may deem a claim
abandoned when a party moves for summary judgment on one ground and the party
opposing summary judgment fails to address the argument in any way.").

city officials are so "persistent and widespread . . . as to constitute a custom or usage with the force of law." Sorlucco, 971 F.2d at 870–71 (internal quotations omitted); see also Bertuglia v. City of New York, 133 F. Supp. 3d 608, 649 (S.D.N.Y. 2015), aff'd sub nom., Bertuglia v. Schaffler, 672 F. App'x 96 (2d Cir. 2016); Munoz v. City of New York, No. 04CV1105, 2008 WL 464236, at *3 (S.D.N.Y. Feb. 20, 2008).

The defendants are correct that the plaintiff has failed to carry his summary judgment burden of demonstrating that the municipality, as opposed to the individual actors, was the "moving force" behind the conduct in question. No reasonable jury could find that there was a municipal policy so persistent as to constitute a "custom or usage with the force of law."[2] Therefore, the defendants' motion for summary judgment dismissing the plaintiff's claims under Section 1983 against the City is **granted.**

**ii.**

The plaintiff's claims against the individual defendants in their official capacities under Section 1983 also fail. For Section 1983 claims, a suit against a governmental officer in the officer's official capacity is equivalent to a suit against

---

[2] Additionally, in his opposition, the plaintiff failed to respond to the defendants' argument. As a result, the plaintiff has abandoned his Section 1983 claims against the City. See, e.g., Duarte, 265 F. Supp. 3d at 352–53.

that entity of which the officer is an agent. See McMillian v. Monroe County, 520 U.S. 781, 785 n. 2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); see also Grosso v. Town of Clarkstown, No. 94CV7722, 1998 WL 566814, at *11 n. 4 (S.D.N.Y. Sept. 3, 1998). Thus, the plaintiff's Section 1983 claims against the individual defendants in their official capacities are duplicative of the plaintiff's Section 1983 claims against the City, and must also be dismissed because there is no showing at all of liability under the Monell doctrine. See Lipton v. Cnty. of Orange, 315 F. Supp. 2d 434, 452 (S.D.N.Y. 2004); Biswas v. City of New York, 973 F. Supp. 2d 504, 540 (S.D.N.Y. 2013). Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's claims against the individual defendants in their official capacities under Section 1983 is **granted.**

### iii.

The plaintiff also asserts claims against the individual defendants in their individual capacities under Section 1983 based on alleged discrimination, hostile work environment, and retaliation.

The plaintiff claims that the defendants discriminated against him because of his race and national origin by failing to promote him to the Property Damage Division Chief position posted in December, 2014, failing to promote him to the Property Damage Division Chief position posted in January, 2016, and failing to promote him to the School Claims Division Chief position posted in June, 2016.

Discrimination claims alleging a failure to promote under Section 1983 are evaluated under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ruiz v. Cty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (holding that discrimination claims under Title VII and Sections 1981 and 1983 are analyzed under the McDonnell Douglas framework). Initially, the plaintiff has the burden of proving, by a preponderance of evidence, a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. The plaintiff's prima facie burden is "not onerous." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "To establish a prima facie case of a discriminatory failure to promote, a [Section 1983] plaintiff must ordinarily demonstrate that: (1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] applied and was qualified for a job

for which the employer was seeking applicants; (3) [the plaintiff] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Aulicino v. New York City Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009) (quoting Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004)). The fourth element can be satisfied by demonstrating that the position was filled by someone outside of Plaintiff's protected class. See Butts v. New York City Dep't of Hous. Pres. And Dev., No. 00CV6307, 2007 WL 259937, at *10 (S.D.N.Y. Jan. 29, 2007); see also Concepcion v. City of New York, No. 15CV2156, 2016 WL 386099, at *14 (S.D.N.Y. Jan. 29, 2016), aff'd, 693 F. App'x 31 (2d Cir. 2017) (finding that the plaintiff satisfied the fourth element of a prima facie case because the positions the plaintiff applied for were filled by a male candidate and a white candidate, both of whom were outside of the plaintiff's protected classes). In sum, the plaintiff must show that he "was rejected under circumstances which give rise to an inference of unlawful discrimination." Aulicino, 580 F.3d at 80.

If the plaintiff demonstrates a prima facie case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for refusing to promote the employee. See Holt v. KMI-Cont'l, Inc.,

95 F.3d 123, 129 (2d Cir. 1996). The defendants' burden at this stage is "one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Finally, if the defendants satisfy this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515–16 (1993) (quoting Burdine, 450 U.S. at 258); see also Holt, 95 F.3d at 129. "The plaintiff must produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendants] were false, and that more likely than not [discriminatory animus] was the real reason for the [failure to promote].'" Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)); see also Thelwell v. City of New York, No. 13CV1260, 2015 WL 4545881, at *12 (S.D.N.Y. July 28, 2015), aff'd, 733 F. App'x 561 (2d Cir. 2018).

### a.

The plaintiff complained of three failures to promote in his amended complaint. The defendants argue that the Court should dismiss the plaintiff's first failure to promote claim relating to the December, 2014 Property Damage Division Chief

position because the defendant was not prepared for his interview and offered insufficient evidence of discriminatory animus. In his opposition, the plaintiff fails to respond to this argument and states only that his <u>two</u> failure to promote claims, regarding the Property Damage Division Chief position in January, 2016 and the School Claims Division Chief position in June, 2016, have merit. As a result, the plaintiff has abandoned his first failure to promote claim in regard to the December, 2014 Property Damage Division Chief position. <u>See, e.g.</u>, <u>Duarte</u>, 265 F. Supp. 3d at 352–53.

**b.**

With regard to the plaintiff's two remaining failure to promote claims, the plaintiff alleges that the individual defendants discriminated against the plaintiff on the basis of race and national origin in violation of Section 1983. The plaintiff, an African American, is a member of a protected class, and thus has satisfied the first requirement of his prima facie case under Section 1983. The plaintiff established the third requirement because he was rejected for both positions. The plaintiff established the fourth requirement because the promotions the plaintiff applied for were filled by two white candidates, who were outside of his protected class.

The burden on a plaintiff to satisfy the second requirement, that he applied and was qualified for the job, is

quite low. He need only show that he "possesses the basic skills necessary for performance of the job." De la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996) (citations and alteration omitted). Being "'qualified' refers to the criteria the employer has specified for the position." Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997). Absent a showing that the qualifications were developed in bad faith, "[a] plaintiff is not entitled to get his or her case before a jury by contending that the demands of the employer were not reasonably related to the performance of the job." Id.; see also Alleyne v. Four Seasons Hotel--New York, No. 99CV3432, 2001 WL 135770, at *10 (S.D.N.Y. Feb. 15, 2001), aff'd, 25 F. App'x 74 (2d Cir. 2002).

It is undisputed that the plaintiff applied for both jobs. However, he did not meet the requirements of having four or more years of experience in investigating and adjusting tort claims and eighteen months of such experience in a supervisory, managerial or executive capacity. Méndez Decl. Exs. R, Y. When the plaintiff applied for the January, 2016 Property Damage Division Chief position, he had been employed by the OOC for less than three years. Similarly, he was approximately nine months short of the four-year requirement when he applied for the June, 2016 School Claims Division Chief position. The

plaintiff has not provided any evidence that the four-year qualification for both positions was developed in bad faith.

However, it is also not clear whether all the individuals who were interviewed met the job requirements. While the defendants claim that Brusgard and Goldband had the requisite experience, it is also not apparent whether they each had four or more years of experience in investigating and adjusting tort claims and whether eighteen months of such experience was in a supervisory, managerial, or executive capacity. In any case, the defendants admit that the OOC's practice was to interview all internal candidates regardless of qualifications. Supp. Reilly Decl. ¶¶ 4-5. Because the OOC did not use the minimum qualifications as a bar to interview any internal applicant, construing the facts in the light most favorable to the plaintiff, the plaintiff has carried his minimal burden of a prima facie case under McDonnell Douglas.

The defendants have articulated legitimate non-discriminatory reasons for not promoting the plaintiff; they state that both Brusgard and Goldband were given the promotions because they were better qualified and interviewed better than the plaintiff. The defendants explain that Brusgard had extensive experience in the Property Damage Division because she worked in the Division for 19 years from 1988 to 1995 and from 2007 to the time of her selection and had some experience as a

supervisor. She received unanimously high marks from her interviewers, and Reilly ranked her as the "Number 1" candidate. In contrast, the plaintiff was employed by the OOC for less than three years and had no other experience adjusting claims. Further, his interviewers concluded that he was not committed to the position; in fact, Reilly believed that the plaintiff had given one of the worst interviews for the position. The plaintiff does not dispute that he himself said that the position was not his "life passion" and that he wished to move on to other positions after.

Similarly, with respect to the June, 2016 position as School Claims Division Chief, the defendants point to Goldband's extensive supervisory experience in private practice and the fact that he impressed his interviewers with his preparation and clear vision for improving the School Claims Division. In contrast, the plaintiff's interviewers noted his lack of any experience working with personal injury claims and his dearth of knowledge concerning personal injury law.

The plaintiff has failed to offer sufficient evidence that the defendants' reasons for promoting Brusgard are pretextual. The plaintiff has not argued that the reasons given by Reilly and Cox for hiring Brusgard instead of the plaintiff were false. The plaintiff has only alleged that Kim told Gonzalez in February, 2015, nearly a year before the January, 2016, opening,

that Kim wanted to get rid of the "Black guy" in the division because he was making too much money.[3] Kim disputes that he made the comment about the plaintiff. However, the factual dispute is not material because Kim's comment is insufficient to show that more likely than not, discriminatory bias was the real reason for the failure to promote the plaintiff.

It is true that "impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision . . . so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." Ferrell v. Leake & Watts Servs., Inc., 83 F. App'x 342, 346 (2d Cir. 2003) (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999)). In analyzing whether remarks are probative of discriminatory animus or whether they are just stray remarks, courts assess "(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." Schreiber v.

---

[3] The defendants dismiss Kim's remark as hearsay. However, Kim's remark would not be hearsay as to Kim, who is a defendant in the case. See Fed. R. Evid. 801(d)(2)(A). Moreover, the statement may be a statement of Kim's then-existing state of mind and an exception to the rule against admitting hearsay. See Fed. R. Evid. 803(3).

Worldco, LLC, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004)

(collecting cases); Henry v. Wyeth Pharm., Inc., 616 F.3d 134,

149 (2d Cir. 2010).

Kim was part of the three-member panel that interviewed

the plaintiff, but he allegedly made the remark nearly a year

prior to the opening of the January, 2016 position, in a context

separate from the promotion process. The plaintiff has offered

no evidence that the reasons given by Cox and Reilly for

promoting Brusgard for the January, 2016 position were

pretextual, or that they relied on the alleged remark, or were

even aware of it. The comment itself would not be sufficient to

show that more likely than not, discriminatory animus was the

motivating reason for the failure to promote. "While it is true

that the stray remarks of a decision-maker, without more, cannot

prove a claim of employment discrimination, . . . when other

indicia of discrimination are properly presented, the remarks

can no longer be deemed 'stray,' and the jury has a right to

conclude that they bear a more ominous significance." Abdu-

Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir.

2001) (internal quotation marks and citations omitted). In this

case, there are no other indicia of racial discrimination in the

promotion process and the single unrelated comment made almost a

year before the position opened is insufficient to taint the

process. See Benson v. Family Dollar Operations, Inc., 755 F.

App'x 52, 56 (2d Cir. 2018) (finding that a single comment was insufficient to present a triable issue as to discriminatory motive). The plaintiff has presented no evidence of any additional remarks or actions that demonstrated discriminatory bias. Given the totality of the evidence, no reasonable factfinder could conclude that the defendants' observations that the plaintiff's lack of preparation, experience, and enthusiasm, which were supported by the plaintiff's own admissions of his lack of interest in the division and passion for the role, were unworthy of credence.

The plaintiff has also failed to offer sufficient evidence that the defendants' reasons for promoting Goldband for the June, 2016 position were pretextual. Kim was not involved in interviewing the plaintiff for the June, 2016 position. There is also no evidence in the record that Kim discussed the plaintiff's credentials with Jacobson or Karp before they sent Kim their recommendation that the position be filled by Goldband. The plaintiff has failed to provide any evidence that the objective reasons that Jacobson and Karp provided for not hiring the plaintiff were false.

Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 failure to promote claims against the individual defendants is **granted.**

**2.**

The plaintiff alleges a hostile work environment claim pursuant to Section 1983. The plaintiff complains, among other things, about: (1) having his supervisory responsibilities taken away by Emilio Gonzalez when he became Division Chief in February, 2015; (2) receiving an excessive number of Sanitation Claims to process; (3) receiving two "needs improvement" evaluations in May, 2017 and June, 2018; (4) receiving a performance improvement plan in June, 2017; (5) receiving emails from Brusgard, between December, 2017 and January, 2018, regarding attendance policies; (6) feeling humiliated because his coworker told him, in front of his colleagues, that Brusgard was the new person in charge of the Property Damage Division; (7) having his requests for a different work station and new phone set, denied; (8) being given a dirty cubicle that did not have a regular working table; and (9) feeling humiliated by Reilly's instructions to not bother facilities workers.

Hostile work environment claims under Section 1983 are analyzed using the same standard applied to Title VII hostile work environment claims. See Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 988 n.5 (S.D.N.Y. 2017) (collecting cases). To establish a prima facie case of a hostile work environment, a plaintiff must show: (1) discriminatory harassment that was "sufficiently severe or pervasive to alter

26

the conditions of the victim's employment and create an abusive working environment," and (2) that a specific basis exists for imputing the objectionable conduct to the employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The plaintiff must show not only that the plaintiff subjectively perceived the environment to be abusive but also that the environment was objectively hostile and abusive. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).

The first element of the prima facie case must be established by a showing that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" Demoret, 451 F.3d at 149 (quoting Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir.2004)). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (quoting Alfano, 294 F.3d at 374). "It is axiomatic that the plaintiff also must show that

the hostile conduct occurred because of a protected characteristic." <u>Tolbert v. Smith</u>, 790 F.3d 427, 439 (2d Cir. 2015); <u>see also</u> <u>Thelwell</u>, 2015 WL 4545881, at *9-10.

The plaintiff has not established the first element of a prima facie case of a hostile work environment because the nine instances cited above and the plaintiff's general allegations that the defendants embarrassed and criticized him are not so severe as to be abusive. Receiving performance evaluations and improvement plans, changes in workload and responsibility, and emails about attendance from Brusgard did not permeate the plaintiff's workplace with intimidation and ridicule. <u>See</u> <u>Demoret</u>, 451 F.3d at 150 (finding that a supervisor's close monitoring of plaintiff's work, mild rudeness to her, failure to take advantage of all of her abilities, and reassignment of some of plaintiff's responsibilities to other employees was not so severe as to be abusive); <u>see also</u> <u>Lucenti v. Potter</u>, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006) ("Allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim."). In addition, not receiving a phone set and getting a "dirty" cubicle that needed a regular working table installed were isolated slights that did not alter the terms and conditions of the plaintiff's employment. Moreover, there is no evidence that any hostile work environment occurred because of the plaintiff's age, race, or

national origin. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's hostile work environment claims under Section 1983 against the individual defendants is **granted**.

3.

The plaintiff brings a claim for retaliation pursuant to Section 1983. The plaintiff alleges that the defendants retaliated against him for engaging in three instances of protected activity: (1) speaking to the Deputy Comptroller for Public Affairs in August, 2016 and telling her that he was being discriminated against; (2) filing the Notice of Claim in March, 2017; and (3) bringing this lawsuit. The defendants concede that the plaintiff engaged in protected activity when he spoke to the Deputy Comptroller and when he filed his Notice of Claim. The plaintiff complains that the defendants retaliated against him, engaging in substantially the same instances of conduct that formed the plaintiff's hostile work environment claim.

Federal retaliation claims are also reviewed under the McDonnell Douglas burden-shifting approach. See Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013). The plaintiff "must establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected

activity and the adverse employment action." Id. at 844
(internal quotation marks and citation omitted).

The plaintiff's retaliation claim fails because the
plaintiff concedes that the individual defendants cannot be held
personally liable for the acts of retaliation.[4] Mem. Opp. at 13.
Accordingly, the defendants' motion for summary judgment
dismissing the plaintiff's retaliation claims under Section 1983
against the individual defendants is **granted.**

### C.

The plaintiff asserts claims against both the City and the
individual defendants under the NYCHRL.

### i.

The plaintiff alleges that the City should be held liable
under the NYCHRL for discrimination, hostile work environment,
and retaliation.

### 1.

The plaintiff alleges that the City discriminated against
him by failing to promote him in violation of the NYCHRL. As
with his Section 1983 claims, the plaintiff alleges that

---

[4] The plaintiff also failed to respond to the defendants' arguments that
(1) some of the alleged acts of retaliation took place before the plaintiff
contends that he engaged in protected activity; (2) none of the acts
constitute adverse actions; and (3) the defendants had ample legitimate
reasons for issuing the evaluations and performance improvement plan because
the plaintiff's performance deficiencies were well documented. As a result,
the plaintiff has abandoned his retaliation claim. See, e.g., Duarte, 265 F.
Supp. 3d at 352–53.

discrimination was on the basis of race and national origin. He
also alleges that discrimination occurred on the basis of age.

Courts must analyze NYCHRL claims separately from any
federal and state law claims and should construe the NYCHRL
"liberally for the accomplishment of the uniquely broad and
remedial purposes thereof." Mihalik v. Credit Agricole Cheuvreux
N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). "This task is
not always uncomplicated, however . . . [because there is] no
specific guidance concerning how the NYCHRL should be 'construed
liberally' and independently of state and federal law in its
particular applications." Chauca v. Abraham, 841 F.3d 86, 87–88
(2d Cir. 2016) (emphasis in original). It is "unclear whether,
and to what extent the McDonnell Douglas burden-shifting
analysis has been modified for NYCHRL claims." Mihalik, 715 F.3d
at 110 n.8. However, an employer "is entitled to summary
judgment . . .  only if the record establishes as a matter of
law that 'discrimination play[ed] no role' in its actions." Id.

The McDonnell Douglas framework is at least a helpful
starting point to determine whether the defendants have shown
that discrimination played no role in the decision at issue. For
the reasons stated above, the plaintiff has raised a prima facie
case of race and national original discrimination. He has also
raised a prima facie case of age discrimination. He satisfies
the first requirement because "the employment provisions of the

City HRL do not have any specific age limitation." <u>Abdu-Brisson</u>, 239 F.3d at 467 n.3; N.Y. City Admin. Code § 8-107(1). The plaintiff established the third requirement of his prima facie case because he was rejected for both positions. The plaintiff established the fourth requirement of his prima facie case because the promotions he applied for were filled by people younger than he was; the plaintiff was born in 1949 and Brusgard and Goldband were born in 1965 and 1985, respectively. Although the plaintiff may not have met the experience requirements for the position as is required for the second requirement to establish a prima facie case, it is unclear whether the OOC used the qualifications as a bar to interview any internal applicant.

As discussed above, the defendants have offered legitimate, nondiscriminatory reasons for hiring two candidates who were white and younger than the plaintiff, such as their supervisory experience, preparedness for the interview, and enthusiasm. In contrast, the plaintiff's interviewers determined that the plaintiff was not qualified for the two positions because he did not interview well, lacked the supervisory experience for the position, lacked experience for handling property damage and personal injury claims, and lacked enthusiasm.

The City is also entitled to summary judgment on the plaintiff's claims under the NYCHRL for substantially the same reasons that the Court granted summary judgment dismissing the

plaintiff's Section 1983 claims against the individual
defendants. It is apparent that discrimination played no role in
the hiring decisions. Kim's alleged comment concerning the
plaintiff's race, was made nearly one year before the OOC posted
the January, 2016 position and was not relied on in the decision
to promote Brusgard. Without more, the comment was just a stray
remark that was not probative of discriminatory intent in the
promotion decision. It is also clear from the record that the
plaintiff was not the most qualified candidate for either
position. Furthermore, Kim was not even an interviewer for the
June, 2016 position.

The plaintiff cites two comments by Karp and Kim, which he
interpreted as biased against him because of his age. While the
plaintiff argues that Karp's remark that they were "going in
another direction" meant that they were looking for younger
candidates, Karp's comment was neutral on its face; the
plaintiff has provided no evidence linking Karp's remarks to
animosity towards the plaintiff because of his age. Kim's
question during the interview for the January, 2016 position,
"[a]fter the Division Chief position, then what?" was also
neutral. The plaintiff admitted that during the interview, he
had said that being a Division Chief was not his life passion
and that he wanted to become Division Chief because it was a
higher position from which he might be able to qualify for

something else. Asking what the "something else" that the plaintiff wanted to qualify for was a natural follow-up question that did not have anything to do with the plaintiff's age. The three comments that the plaintiff believes show evidence of discriminatory intent are inadequate, alone or in conjunction with the plaintiff's other proffered evidence, to show that race, national origin, or age discrimination played a role in the defendants' decision not to promote the plaintiff. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's failure to promote claims under the NYCHRL against the City is **granted.**

### 2.

The plaintiff asserts a claim against the City for hostile work environment under the NYCHRL. The NYCHRL is intended to be more protective than state and federal law. See Farrugia v. N. Shore Univ. Hosp., 820 N.Y.S.2d 718, 724 (Sup. Ct. 2006). The "severity" and "pervasiveness" of the alleged harassment "are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 38 (App. Div. 2009) (citing Farrugia, 820 N.Y.S.2d at 725). "Thus, less egregious conduct than that required under Title VII may support a hostile work environment claim under the NYCHRL." Panzarino v. Deloitte & Touche LLP, No. 05CV8502, 2009 WL 3539685, at *9 (S.D.N.Y.

Oct. 29, 2009); see also Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 724 n.10 (2d Cir. 2010).

However, the "broader purposes of the NYCHRL do not connote an intention that the law operate as a general civility code." Zhao v. Time, No. 08CV8872, 2010 WL 3377498, at *23 (S.D.N.Y. Aug. 24, 2010). Summary judgment is available where the employer can prove that the alleged conduct does not even represent a "borderline" violation, but "could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." Williams, 872 N.Y.S.2d at 41; see also Thelwell, 2015 WL 4545881, at *12.

In this case, even under the NYCHRL's more liberal standard, the conduct alleged – namely performance evaluations, changes in workload responsibility, and criticism about the plaintiff's attendance — falls short of establishing a hostile work environment. In addition, not receiving a phone set, having a smaller cubicle, and being embarrassed that a colleague was promoted are trivial and isolated incidents that do not give rise to an inference of discrimination. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's hostile work environment claim against the City under the NYCHRL is **granted.**

**3.**

The plaintiff brings claims against the City for retaliation pursuant to the NYCHRL. As discussed above, the plaintiff abandoned his retaliation claim by failing to respond to the defendant's arguments and conceded that the individual defendants cannot be held personally liable for the acts of retaliation. Therefore, the defendants' motion for summary judgment dismissing the plaintiff's hostile work environment claim against the City under the NYCHRL is **granted.**

**ii.**

The plaintiff alleges that the individual defendants should be held individually liable under the NYCHRL for discrimination, hostile work environment, and retaliation. The NYCHRL provides for individual liability on either a direct theory or an "aiding and abetting" theory. See, e.g., Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009); Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 366-67 (S.D.N.Y. 2012).

To be liable under a direct theory, a defendant must have participated in the conduct giving rise to a discrimination claim. See Schanfield, 663 F. Supp. 2d at 344. However, the plaintiff has not presented sufficient evidence to show that any of the individual defendants actually participated in unlawful conduct related to discrimination for failure to promote,

36

hostile work environment, or retaliation. With regard to the
failure to promote claims, the interviewers provided objective
reasons for hiring Brusgard and Goldband instead of the
plaintiff for the two positions at issue. Kim allegedly made a
racially offensive comment about the plaintiff nearly a year
before the plaintiff applied for the January, 2016 position.
Karp's comment about going in another direction and Kim's
question regarding what the plaintiff wanted to do after the
Division Chief position were neutral as to age. Based on the
record, the individual interviewers provided legitimate
objective reasons why Brusgard and Goldband were candidates that
were more qualified for the positions and there is no indication
that Kim's remark affected the decision not to promote the
plaintiff. As discussed above, none of the actions that the
plaintiff complained of rose to the level of a hostile work
environment. Even under the more liberal standards of the
NYCHRL, the actions that the plaintiff complained of were
insufficient to allege an atmosphere of abuse. Lastly, the
plaintiff himself has conceded that the individual defendants
cannot be held personally liable for the acts of retaliation.

Second, the aiding and abetting theory is not viable
against the individual defendants. "[A]n individual cannot aid
or abet his or her own violation of the Human Rights Law." Bliss
v. MXK Rest. Corp., 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016)

(quoting <u>Hardwick v. Auriemma</u>, 983 N.Y.S.2d 509, 513 (App. Div. 2014)). Moreover, "[w]here no violation of the Human Rights Law by another party has been established . . . an individual employee cannot be held liable for aiding or abetting such a violation." <u>Id.</u> (quoting <u>Strauss v. N.Y. State Dept. of Education</u>, 805 N.Y.S.2d 704, 709 (App. Div. 2005)). Because the plaintiff has failed to establish liability under NYCHRL against the City and against any individual defendant, the plaintiff cannot establish discrimination, hostile work environment, and retaliation claims against the individual defendants under the aider and abettor theory of liability. Accordingly, the defendants' motion for summary judgment dismissing the discrimination, hostile work environment, and retaliation claims under the NYCHRL against the individual defendants is **granted.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons stated above, the defendants' motion for summary judgment dismissing this action is **granted**. The Clerk of the Court is directed to enter judgment dismissing the complaint and closing this case. The Clerk is also directed to close all pending motions.


**SO ORDERED.**

**Dated:**      **New York, New York**
               **January 21, 2020**

                              _____/s/ John G. Koeltl_____
                                    **John G. Koeltl**
                           **United States District Judge**